JOHN W. MCCLELLAND ET AL. V. LEONARD K. SCROGGIN.

[FILED OCTOBER 26, 1892.]

1. **Contract:** CONDITIONAL SALE: BAILMENT. By a written agreement S. leased to M. 640 acres of land and a large amount of personal property thereon, consisting of live stock and farming implements, of the agreed value of $23,331. It was provided in said agreement: "That when said M. shall pay to said S. the sum of $23,331, with interest thereon at the rate of ten per cent per annum, together with the rents above specified, and all sums which S. may advance to or for said M., with interest thereon, then all the above property shall be conveyed to him, the said M., together with all increase thereof. Until such payment such property shall be and remain the property of S. together with the increase thereof, and should any of said property be sold by consent of S., the proceeds thereof shall be ap-

plied upon the above indebtedness." *Held*, Not a conditional sale, but an agreement to sell at the election of M., and that the relation of the parties with respect to said property is that of bailor and bailee only.

2. **Bailment:** EXECUTION AGAINST BAILEE. *Held*, That the property mentioned in said agreement, before payment by M. could not be taken on execution to satisfy judgments against the latter.

3. **Evidence** examined, and *held* to sustain the decree for defendant in error.

ERROR to the district court for Nuckolls county. Tried below before Morris, J.

*H. W. Short* and *S. B. Pound*, for John W. McClelland, plaintiff in error, contending that the contract was a sale and not a bailment of chattels, cited : *Mallory v. Willis*, 4 N. Y., 85; *Foster v. Pettibone*, 7 Id., 435; *Chase v. Washburn*, 1 O. St., 244; *Lonergan v. Stewart*, 55 Ill., 44; *Richardson v. Olmstead*, 74 Id., 213; *Bailey v. Bensley*, 87 Id., 556; *Grier v. Stout*, 2 Ill. App., 602; *Johnston v. Browne*, 37 Ia., 200; *Nelson v. Brown*, 44 Id., 455 ; *Irons v. Kentner*, 51 Id., 88; *Carlisle v. Wallace*, 12 Ind., 252; *Rahilly v. Wilson*, 3 Dill. [U. S.], 420; *Williamson v. Berry*, 8 How. [U. S.], 544; 1 Story, Bailment, 2; *Baker v. Woodruff*, 2 Barb. [N. Y.], 520; *Norton v. Woodruff*, 2 N. Y., 153; *Tilt v. Silverthorne*, 11 Upper Can. Q. B., 619; *Wilson v. Cooper*, 10 Ia., 556; *Ives v. Hartley*, 51 Ill., 520; *Butterfield v. Lathrop*, 71 Pa. St., 226 ; *Marsh v. Titus*, 3 Hun [N. Y.], 550; *McCabe v. McKinstry*, 5 Dill. [U. S.], 509 ; *Grier v. Stout*, 2 Bradw. [Ill.]., 602 ; *Benedict v. Ker*, 29 Upper Can. C. P., 410; *Jones v. Kemp*, 49 Mich., 9; *Austin v. Seligman*, 21 Blatchf. [U. S.], 506 ; *Fishback v. Van Dusen*, 33 Minn., 111.

*R. D. Sutherland*, for Thomas L. McClelland, plaintiff in error.

*S. W. Christy*, for Glazier Bros. et al., plaintiffs in error.

*Robert Ryan, S. A. Searle,* and *T. T. Beach, contra:*

Under the contract the relation of parties with respect to the chattels was that of bailor and bailee. (*Nelson v. Brown,* 53 Ia., 555; *Sexton v. Graham,* Id., 181; *Schindler v. Westover,* 99 Ind., 395; *Foreman v. Drake,* 98 N. C., 311; *Dunlap v. Gleason,* 16 Mich., 158; *Barker v. Roberts,* 8 Greenl. [Me.], 101; *Fawcett v. Osborn,* 32 Ill., 411; *Andrus v. Mann,* 92 Id., 40; *McCall v. Powell,* 64 Ala., 254; *Pash v. Weston,* 52 Ia., 675; *Whitney v. Mc-Connell,* 29 Mich., 12; *Clark v. Jack,* 7 Watts [Pa.], 375; *Becker v. Smith,* 59 Pa. St., 469; *Middleton v. Stone,* 111 Id., 589; *Dando v. Foulds,* 105 Id., 74; *Edwards' Appeal,* Id., 103; *Colton v. Wise,* 7 Ill. App., 395; *Hunt v. Wyman,* 100 Mass., 198; *Weir Plow Co. v. Porter,* 82 Mo., 23; *Holt v. Holt,* 58 N. H., 276; *Evansville & T. H. R. Co. v. Erwin,* 84 Ind., 457; *Sargent v. Gile,* 8 N. H., 325; *Marquette Mfg. Co. v. Jeffery,* 49 Mich., 283; *Emerson v. Fisk,* 6 Greenl. [Me.], 200.)

Post, J.

This case comes into this court by petition in error from the district court of Nuckolls county. On the 20th day of October, 1888, the defendant in error, Leonard K. Scroggin, filed in said court his petition in which he alleges in substance that he is the owner of certain live stock and farm implements then in the possession of the plaintiff in error McClelland upon land owned by him, Scroggin, in said county. He alleges that the defendant below, McClelland, with intent to defraud him, had confessed judgments in favor of the other defendants therein named, amounting in the aggregate to $10,068.80, and had procured the personal property aforesaid to be taken on execution to satisfy said judgments. In said petition it is alleged that the only right, title, or interest of the said McClelland in or to said property is such as is conferred by the following agreement, to-wit:

" This contract and agreement, made and entered into this twenty-first day of February, A. D. 1888, by and between Leonard K. Scroggin, of Mt. Pulaski, Logan county, state of Illinois, of the first part, and John W. McClelland, of Oak, Nuckolls county, Nebraska, party of the second part, witnesseth :

" That said first party hereby leases to second party for the term of two years from the first day of March, A. D. 1888, to-wit : One section of land containing six hundred and forty acres, situated in Nuckolls county, Nebraska, upon the Little Blue river, now occupied by said second party.

" Said McClelland is to farm three hundred and twenty acres of said farm in a good farmer-like manner in corn and small grain, and therefor is to pay said Scroggin one-third of the corn in the crib clean and well gathered, one-third of the small grain delivered in the market designated by said Scroggin. For the pasture land of three hundred and twenty acres said second party is to pay to said Scroggin the sum of three hundred and twenty dollars yearly, on the first day of each March, on and after March 1, eighteen hundred and eighty-nine, for and during the continuance of this lease, being six hundred and forty dollars in all. Said Scroggin further agrees to lease to said Mc-Clelland the following property to be used upon said farm, to-wit : Two hundred and six cows, one hundred and twenty-six calves, coming one year old, forty-nine horses and colts, six bulls, forty hogs, and all the implements and machinery on said farm ; and it is further agreed, that when said McClelland shall pay to the said Scroggin the sum of twenty-three thousand three hundred and thirty-one dollars ($23,331), with interest thereon at the rate of ten per cent per annum, together with the said rents above specified, and all sums of money which said Scroggin may advance to or for said second party, with the interest thereon, then all the above described property shall be con-

veyed to said second party by said Scroggin, together with all the increase thereof; until such payment, said property shall be and remain the property of said Scroggin, together with the increase thereof; and should any of said property be sold by consent of said Scroggin the proceeds therefor shall be applied in payment upon said above indebtedness. All property that may be purchased by said second party to be kept and used upon said farm shall be and remain the property of said Scroggin until said above mentioned debts shall be fully satisfied and paid, and thereafter the same or the remainder thereof unsold shall be conveyed to said second party by first party. It is further agreed by and between the said parties that in case the rents above mentioned and the above described debts shall be paid at the expiration of this lease the said second party is to have the privilege at his election to renew and extend this lease, at the same rental, for the period of two years from the expiration thereof. It is further agreed by and between said parties that said second party is to feed and take care of above mentioned stock in a good and farmer-like manner during the term of this lease.

"In witness whereof said parties have hereunto subscribed their names this twenty-first day of February, A. D. 1888.        L. K. SCROGGIN.

"J. W. McCLELLAND."

It is further alleged that since the defendant went into possession of the real estate and personal property above named, the plaintiff Scroggin has advanced to him large sums of money, and that he, defendant, has sold live stock and other property raised on said premises but has failed to account for the proceeds or any part thereof, wherefore he prays for an accounting, etc.

The answer of McClelland, after denying *seriatim* the several allegations of the petition as to fraud and collusion, non-performance of his undertakings, etc., alleges that on the 10th day of February, 1883, a written contract was en-

tered into between the parties substantially the same as the one set out in the petition. The consideration named in the contract set out by defendant is $8,762.30, and the personal property described as being on the farm consists of thirteen horses, eighty-seven head of cattle, forty hogs, one stallion, twenty-seven head of sheep, four wagons, three cultivators, three breaking plows, one harrow, one sulky plow, one set of harness and one corn planter; said instrument to take effect and be in force from the first day of March, 1883. It is further alleged that he, McClelland, took possession under said agreement and managed said property until February 21, 1888, at which time he entered into the agreement with the plaintiff set out in the petition; that at the last named date he had fully paid the amount named in the first agreement, by his check on the bank of Scroggin & Son for $5,000, and cash paid on said day $4,271.35, and that he thereby became the owner of said property and the increase thereof, together with other property purchased by him and kept and used on the farm aforesaid, and that he had fully performed all the conditions of the agreement bearing date of February 10, 1883. It is also alleged that prior to the twenty-first day of February, 1888, the plaintiff had received from the defendant at five different times, money amounting in the aggregate to $19,938.44, which with interest it was understood should be applied on the $23,331 mentioned in the agreement executed on that day.

For a second defense it was alleged that defendant below had paid taxes on the plaintiff's real estate amounting to $1,092.18 and on his personal property amounting to $748.15; that he had made valuable and lasting improvements of plaintiff's land of the value of $1,000, and performed services for him in making loans and collecting money, $2,400; in digging wells, building fences and windmills, etc., $3,498; and in managing the farm and feeding and caring for plaintiff's stock, $1,500. He further alleges

that he is the head of a family, owning neither town lots nor lands, and claims his statutory exceptions from the property in controversy.

For reply the plaintiff admits the execution of the agreement on the 10th day of February, 1883, and alleges that during the time it was in force he had advanced the defendant large sums of money under said agreement, and had furnished him live stock and implements, so that on the 21st day of February, 1888, defendant was indebted to him in a large amount, and on that day they had a full and complete settlement of all matters of account on either side, at which it was found that defendant was indebted to him in the sum of $23,331, after deducting all credits, including all of the items set out in the answer. He denies the payment of $4,271.35 on that day as well as the $5,000 by check on the bank of Scroggin & Son, and denies that there had been a settlement at any time anterior to said date. He further alleges that he furnished to defendant the $8,762.30 mentioned in the agreement of February 10, 1883, and denies all other allegations of the answer.

The other defendants by answer pleaded their judgments against McClelland and claim to recover under the provisions of sec. 1 of the act approved February 19, 1877, Comp. Stats., chap. 32, sec. 26. The issues having been made up the cause was referred by the district court to Hon. E. F. Warren, with instructions to hear the evidence and report his findings of fact and conclusions of law to the court at a succeeding term thereof. Subsequently the report of the referee was filed, in which he found for the plaintiff below against all of the defendants. Exceptions to several of the findings by the defendants having been overruled, judgment was entered for the plaintiff below in accordance with the recommendation of the referee, and the case was removed to this court by petition in error. The report is too voluminous to set out at length in this opinion, while the evidence comprises five large volumes of

printed matter.  Counsel for plaintiffs in error, realizing
the difficulty under which we would labor in examining
such a mass of evidence, have pointed out in their brief the
parts thereof essential to an examination of all questions
now at issue.  We have carefully and patiently examined
the proofs in question and are entirely satisfied with the
conclusion of the district court.

Accompanying his report, the referee filed a written opin-
ion which we find in the record, in which the questions in-
volved are ably and fully discussed.  Believing that the
profession of the state is entitled to the benefit of his labor
and learning, we copy it in full below, accepting his con-
clusion as the law of the case:

"LEONARD K. SCROGGIN,
                              Plaintiff,
              v.
JOHN W. McCLELLAND ET AL.,
                              Defendants.

"On the 21st day of February, 1888, the plaintiff and
the defendant, John W. McClelland, entered into a written
contract, which was in renewal of one containing similar
provisions dated February 10, 1883, whereby said Scrog-
gin leased to McClelland a section of land in Nuckolls
county, Nebraska, for a term of years, with certain rents
reserved; the contract then proceeds:

"'Said Scroggin agrees to loan to said McClelland the
following property to be used on said farm, to wit: (Here
follows a description of the cattle, horses, and stock.)  And
it is further agreed that when the said McClelland shall
pay to said Scroggin the sum of $23,331, with the interest
thereon at the rate of ten per cent per annum, together
with the rents above specified, and all sums of money that
said Scroggin may advance to or for said McClelland, with
the interest thereon, then all the above described property
(chattels) shall be conveyed to said second party by said
Scroggin, together with the increase thereof; until such

payment such property shall be and remain the property of the said Scroggin.'

"Certain judgment creditors of the said McClelland levied upon the chattels, or some of them, and I have found, as a matter of fact, that they had no actual knowledge or notice of any claims of the plaintiff, and, while the contract was recorded as a chattel mortgage, it had annexed thereto no affidavit so as to make it constructive notice, if the instrument be construed as one of conditional sale. As between these creditors and the plaintiff, the question to be determined is: What is the legal force and effect of said contract? Is it 'a sale, contract, or lease, wherein the transfer of the title or ownership of personal property is made to depend on any condition?' If so, it is void as against such judgment creditors, without notice, of the vendee or lessee in the actual possession of the chattels. (Sec. 26, chap. 32, Comp. Stats.) But if it is a mere agreement to sell, or a bailment, coupled with the provision that the bailee or promisee may have the option of purchasing the chattels, it will not fall within the provisions of said section, and so need not have been recorded, or verified, as therein provided.

"Before the passage of the act of 1877, which is taken, in the main, from the Iowa statutes, a sale upon condition, reserving the title in the vendor, was held good as against purchasers and creditors of the vendee without notice. (*Aultman v. Mallory*, 5 Neb., 178; *Blunk v. Kelley*, 9 Id., 441.) And such is the general rule in the absence or a controlling statute, and no further authorities need be cited to sustain the position. But cases are found in which, under the guise of a lease, the title to personal property is reserved in the vendor or lessor. Familiar examples are found in the leases of sewing-machines or pianos, cars, and agricultural implements. Such contracts are held to be conditional sales—that is, sales with a condition that the title shall remain in the vendor until the

property is paid for. (*Murch v. Wright*, 46 Ill., 487; *Mich. Cent. R. Co. v. Phillips*, 60 Id., 190; *Heryford v. Davis*, 102 U. S., 235; *Hervey v. Rhode Island Locomotive Works*, 93 Id., 664.) And in all such cases, while as between the parties the title does not pass, they are held to be really sales upon condition, and so invalid as to purchasers and creditors without notice, under a statute similar to ours.

"Therefore, the first inquiry here is: Is there any sale of any kind, conditional or otherwise, of the chattels by Scroggin to McClelland? If there was no sale, but only *an agreement for a sale*, then not only would no title pass to the promisee, but it was unnecessary to record the instrument for the purpose of giving constructive notice to creditors and purchasers. A sale 'upon condition' invariably presupposes a *sale*. The language of the contract under consideration is, that on payment of a stated amount by McClelland, Scroggin will convey the chattels to him. Here there is no sale, since McClelland does not agree to purchase, and the minds of the parties have not met upon any such proposition; he does not agree to pay any amount whatever for the chattels; the essential elements, or some of them, of a sale, are wanting. 'To constitute a valid sale, there must be a concurrence of the following elements, viz: (1st) Parties competent to contract; (2d) Mutual assent; (3d) A thing, the absolute or general property in which is transferred from the seller to the buyer; and (4th) A price in money paid or promised.' (Benjamin, Sales, sec. 1.) Here, at most, there are but the first two requisites of a sale. In every conditional sale, or sale upon condition, the vendor can waive the condition and sue for the purchase price; this is one criterion. Here McClelland had agreed to nothing; he had merely an option of purchase—an agreement to sell upon compliance with certain conditions, and it is not claimed that those conditions have been complied with. Scroggin could not

38

sue for the purchase price on the contract, and herein the case at bar differs from the sewing machine, piano, and other like cases; in those the vendee has agreed to pay the 'rents' reserved, and it is provided that on payment of the last installment the chattel is to be the property of the lessee, or that the vendor will then execute a bill of sale therefor. In case of the loss of these chattels by an epidemic upon whom would the loss have fallen? Upon Scroggin or upon McClelland? Clearly upon the plaintiff, since there was no sale.

"Sec. 26 of chap. 32, Comp. Stats., is similar to the provisions of sec. 1922 of the Iowa Code, and was taken therefrom. The judicial construction given to the section by the supreme court of Iowa was also adopted by the legislature of Nebraska in enacting it. (*Campbell v. Quinlin,* 3 Scam. [Ill.], 288; *Martin v. Judd,* 81 Ill., 488; *Hopkins, v. Medley,* 97 Id., 404.)

"In *Budlong v. Cottrell,* 64 Iowa, 235, Cottrell ordered from Budlong nineteen harrows, thirty cultivators, and other property, all with the prices carried out, and the contract contained a stipulation to pay the price in these words: 'We agree to settle for all goods herewith and subsequently ordered by giving our notes. The title, ownership, and right of possession shall be and remain in Budlong until settled for as provided in this contract.' Cottrell mortgaged the goods before a settlement, and the question was as between the 'owners' and such mortgagees, there being no record of the contract under sec. 1922 of the Iowa Code. The court says: 'The theory of the contract is that it was to be fully executed by both parties at substantially the same time, and that until fully executed neither the title to the property nor any right or interest therein should pass.' And the court held it to be neither 'a sale, contract, or lease' within the meaning of said sec. 1922. (See also *Colton v. Wise,* 7 Brad. [Ill. App.], 395; *Hunt v. Wyman,* 100 Mass., 199; *Emerson v. Fisk,* 6 Greenl. [Me.],

200; *Weir Plow Co. v. Porter,* 82 Mo., 23; *Mowbray v. Cady,* 40 Ia., 604.)

"In *Austin v. Dye,* 46 N. Y., 500, the court says: 'It is well established that neither an ordinary bailee of property nor any one having possession under an executory agreement to purchase can give title thereto to a purchaser, although the latter acts in good faith and parts with value without knowledge or notice of the want of title of his vendor, or that third parties have claims upon the property.' And in *Comer v. Cunningham,* 77 N. Y., 398, the court reviews the cases and draws the distinction made in the case at bar.

" *Chamberlain v. Smith,* 44 Pa. St., 431, was a case where one McWharter took from Benson chattels under the following contract: 'Received of John Benson one pair of three-year-old past stags to keep and work for the term of one year; said cattle to be returned in one year. But said McWharter has the privilege, by paying $40 and legal interest at the expiration of the year, to keep said cattle.' Held, a bailment and not a conditional sale. To the same effect, *Becker v. Smith,* 59 Pa. St., 469; *Middleton v. Stone,* 111 Id., 596.

"In *Hart v. Carpenter,* 24 Conn., 426, C. put one Beebee in possession of a cow under the following contract: 'Beebee to keep and fodder, paying himself therefor out of the milk and butter, and if at any time within four months, or at the expiration of four months, said B. should pay for said cow $35, then, on payment, the title of said cow shall vest in said B., but if within said time he shall not pay said amount,' the cow was to be returned. Held, a mere letting of the cow, with the privilege of purchase by paying the stipulated price, and not a sale either absolute or conditional. And the purchaser Hart, without notice of Carpenter's rights, obtained no title to the cow. •In this case it will be noticed that Beebee promised to pay nothing; he did not agree to purchase; he could not have been sued

for the contract price; and therein it is analogous to the case at bar.

"In *Lickbarrow v. Mason*, Smith's Lead. Cas., vol. I, pt. II, p. 1227, it is said: 'There is more plausibility than force in the argument that a man who enables another to establish a false credit by intrusting him with the possession of goods should bear the loss if third parties are deceived. Personal property would be comparatively. valueless to the owner if he could not suffer it to go out of his keeping into that of a bailee or agent without enabling the latter to pass the title by a fraudulent sale.'

"In cases cited by counsel for creditors to show the transaction in the case at bar to be a conditional sale, there is always a promise by the vendee or promise to pay for the chattels or goods delivered; and in such cases, no matter under what form the transaction is disguised, it is held to be a conditional sale, and not a bailment. (See *Bryant v. Crosby*, 36 Me., 562; *Plummer v. Shirley*, 16 Ind., 380; *Rowan v. Union Arms Co.*, 36 Vt., 129.)

"In *Miles v. Edsall*, 14 Pac. Rep. [Mont.], 701, Edsall leased to Murphy cattle at a certain rent, with the understanding that the tenant might purchase at any time during the hiring, at a certain price, by paying the difference between the rent paid and such price, the title meanwhile remaining in the lessor; it was held that the transaction was valid as lease with the privilege of purchase, and the chattels were not liable for the debts of the lessee.

"The supreme court of the United States, in the recent case of *Harkness v. Russell*, 118 U. S., 663, have considered this question, only that the facts in that case were more favorable to the creditors than in the one at bar. There Russell delivered to Phelan & Ferguson certain boilers and engines, upon the express condition that the title should remain in the vendors until payment. Russell took the vendees' notes for the price; some of the notes had been paid; Phelan & Ferguson sold the machinery to

a third party. The case arose under the statutes of Idaho, which contain a provision with regard to the affidavit required to be filed similar to ours. In a long and well considered opinion the court, by Bradley, J., says, the first question to be decided is 'whether the transaction was a conditional sale or a mortgage; that is, whether it was a mere agreement to sell upon a condition to be performed, or an absolute sale, with a reservation of a lien or mortgage to secure the purchase money.' If the latter, it was conceded to be void as against third parties because not verified by affidavit, and not recorded as required by the laws of Idaho. The court held it to be an agreement for a conditional sale, and in conclusion says : 'It is only necessary to add, that there is nothing, either in the statute or adjudged law of Idaho, to prevent, in this case, the operation of the general rule, which we regard as established by overwhelming authority, namely, that, in the absence of fraud, an agreement for a conditional sale is good and valid, as well against third persons as against the parties to the transaction; and the further rule that a bailee of personal property cannot convey the title, or subject it to execution for his own debts, until the condition on which the agreement to sell was made has been performed.'

"If these views are correct, it follows that the judgment creditors of John W. McClelland acquired nothing by the levy of their executions upon the chattels in the possession of the defendant McClelland, and that, as against them, the plaintiff must recover.

"In this discussion I have treated the instrument as in no sense a mortgage taken by Scroggin to secure a debt. It is true that the contract speaks of the 'debt' and the 'indebtedness' owing by McClelland to Scroggin, and provides that in case any of the cattle are sold with the plaintiff's consent, the proceeds shall be applied 'upon the above indebtedness,' yet I do not consider such carelessness and in-

artistic expressions as controlling, or as overruling the plain import of the language used elsewhere. But, if it were the fact that the relation of debtor and creditor existed under the contract, and if the contract is to be construed as a mortgage given to secure the same, the judgment creditors will be in no better position, since the contract was recorded as a chattel mortgage in Nuckolls county, and, therefore, was constructive notice to all persons. But the creditors themselves strenuously insist that the instrument must be construed as one of conditional sale, and not a mortgage.

"The only question of fact worthy to be considered here is that relating to the alleged application of the $20,-000, deposited in the bank of Scroggin & Son, at Mt. Pulaski, Ill., by the defendant John W. McClelland. The plaintiff claims, and so testifies, that all those moneys were applied to the payment of the notes and drafts given by the defendant; McClelland swears that not one dollar of that sum was so applied, but further, that it was agreed between himself and the plaintiff, on February 21, 1888, that that sum stood to McClelland's credit on the books of the bank, and was to be credited, with other items, upon the $23,331 mentioned in the contract, whenever they should have a final settlement at the end of two years. To determine this question I have gone into the accounting between the parties since the date of the first contract in 1883; I have charged McClelland with all sums of money he admits having received from Scroggin, or that the proofs show that he did receive. He admits that on February 21, 1888, the plaintiff surrendered to him unpaid notes and drafts amounting, with interest, to the sum of $21,015.73. A large number of similar notes and drafts had been paid and taken up by McClelland before that time, but there is no evidence as to the time when they were so paid, nor when the moneys on deposit were applied thereto, if they were so applied. I have, therefore, charged McClelland in-

terest on all those notes and drafts to·an arbitrary date—the date of the last settlement, February 21, 1888—and have allowed interest on the deposits to the same date; this method does injustice to neither.    And the figures show that prior to that date McClelland was properly chargeable with notes and drafts, including interest, to the amount of $28,501.96; and that he had paid about $29,-500.    How was this large sum of money paid?    McClelland atttempts to show two cash payments, one of $2,500, made to Scroggin in Kansas, and another of $4,271.35, made at the date of settlement, February 21, 1888.    The plaintiff swears positively that no such cash payments were ever made to him; while McClelland is corroborated as to the first transaction by his brother George, and as to the latter by his wife, his brother-in-law, and his young son. ·

"It will perhaps be sufficient to say that the court could not, and cannot, accept as conclusive the evidence of these payments, contradicted as they are by the circumstances surrounding the transactions.    Men do not do business in that way.    It is incredible that McClelland should have had in his possession large sums of money, of cash, amounting to thousands of dollars, and at the same time be so hard pressed for cash that he could not and did not pay his hired hands their wages, but gave his notes at ten per cent interest therefor, and should suffer his bank account to be overdrawn for small amounts for weeks at a time with the consequent loss of credit.    He at the same time was borrowing large sums of money of Scroggin and paying ten per cent interest on the loans.    And when pressed to explain his possession and acquisition of such large sums of money, and how he came to receive it to put into a satchel, which resembled the widow's cruse of oil, he refuses absolutely to answer, refuses to explain the source of his income, refuses to tell from whom it was derived, shielding himself from answering behind the provisions of the statute which protect a witness from testify-

ing when his answers may subject him to a criminal prosecution, or tend to expose him to public infamy and ignominy. The court is asked to believe that the defendant did business as no other man ever did business before under similar circumstances. The court is the keeper of no man's conscience, and unless bound by the evidence of four witnesses as against one, and all unimpeached, must reject the testimony as too improbable for belief. A boat is missing from its moorings on the Missouri river; it is found six miles above on a sand bar upon the premises and under the control of an individual who, when called upon to account for the possession of the boat, brings into court a half dozen unimpeached witnesses, who testify that they saw the boat floating up the stream without other motive power than that afforded by the current itself. Is the court bound to accept the testimony as true, even if uncontradicted? I doubt it. (*Elwood v. Western Union Tel. Co.*, 45 N. Y., 549; *Koehler v. Adler*, 78 Id., 291.) The story of these cash payments, taken in the light of the surrounding circumstances, is as improbable, if not impossible, as would be the floating of boats up the current of the Missouri river by force of the current alone. The mind rejects it as untrue.

"Throwing those two items out of the account, therefore, and giving to McClelland credit for all sums he has proved he paid to Scroggin, and we find that he has paid about $29,500; that is, very nearly the amount of the deposits and interest, and the $6,000 of drafts and interest. The slight difference between this sum and amount with which he is properly chargeable is easily accounted for by the allowance of interest, or mistake in computation, and the coincidence is startling. He had owed about $28,500, and he had paid about $29,500, if we include in such payments the moneys deposited in the bank at Mt. Pulaski. If these moneys are deducted, if they still stand to his credit, how has he shown payment of the notes and drafts?

"Let us tabulate the figures:

"'John W. McClelland,

　　　　　"'In account with Leonard K. Scroggin.

### Dr.

| | | |
|---|---:|---:|
| To notes surrendered Feb. 21, 1888............. | $21,015 | 73 |
| notes paid prior to Feb. 21, 1888.......:..... | 28,501 | 96 |
| rent of 'home farm' for 1886 and 1887... | 1,000 | 00 |
| products of other farms for 1886 and 1887, | 2,315 | 27 |
| amount due on contract of 1883............. | 13,170 | 07 |
| Total indebtedness........................ | $66,003 | 03 |

### Cr.

| | | | | |
|---|---:|---:|---:|---:|
| By deposits and interest............ | $22,321 | 17 | | |
| real estate taxes paid............. | 1,279 | 13 | | |
| improvements 'home farm'... | 3,498 | 00 | | |
| improvements other farms..... | 1,000 | 00 | | |
| drafts and interest............... | 7,231 | 94 | | |
| check of Feb. 21, 1888........ | 5,000 | 00 | | |
| services rendered................ | 2,500 | 00 | | |
| | | | 42,830 | 24 |
| Balance due Scroggin..................... | | | $23,172 | 79' |

"The closeness of these figures to the amount stated in the contract of February 21, 1888, is another of the significant coincidences of this startling case.   They agree to. within $160, and that difference easily explainable as an honest mistake, error in computing or otherwise, and would have justified the referee in finding as a fact in this case, that on the 21st day of February, 1888, the parties did have a settlement and accounting and the balance of $23,331 was found due to the plaintiff, as he alleges.   Here is further confirmation of the fact that the moneys in bank at Mt. Pulaski were in truth applied to the payment of the notes and drafts of McClelland.   McClelland has shown no sources from which he could have paid them, outside of

the deposits.    But there is one other, and a conclusive rea-
son why it must be so: the written contract between the
parties provided that the proceeds of all sales should be so
applied.    It was ample authority to Scroggin, without a
special transfer thereof on the books of the bank, to so ap-
ply them.

"To have found as a fact that such settlement, accounting,
and balance due were had and found on said date as a fact
herein, would have saved the referee a vast amount of la-
bor and comparison of figures, but would have been con-
vincing, nor satisfactory, to neither of the parties to the
action; while the tabulating of the figures and the state-
ment of the accounts from the commencement of their
dealings give almost a mathematical demonstration that
we have arrived at a correct conclusion in the case.

"Respectfully submitted.

"E. F. WARREN, *Referee.*"

There being no error apparent of record the judgment
should be

AFFIRMED.

THE other judges concur.