FIRST NATIONAL BANK OF BRIDGEPORT, APPELLANT, V. FIRST NATIONAL BANK OF HARTINGTON ET AL., APPELLEES.

FILED DECEMBER 31, 1923.    NO. 22612.

1. **Chattel Mortgages:** MORTGAGED PERSONALTY: PRESUMPTION OF OWNERSHIP. No presumption exists that a mortgagor owns the property covered by his mortgage, as between a party to the mortgage and a stranger.

2. **Estoppel.** The doctrine that that one of two innocent persons must suffer for the wrong of a third, who made the wrong possible by parting with the possession of a chattel, operates only to protect the party who exercises ordinary care in taking a lien upon that chattel.

3. ————. Though a person wilfully cause another to believe in the existence of a certain state of things calculated to mislead him and to make him alter his previous position, the former will not be estopped to aver a different state of things against the latter unless the latter relies and acts to his injury upon the assurance of the former.

APPEAL from the district court for Cedar county: GUY T. GRAVES, JUDGE. *Reversed.*

*Williams, Hurd & Neighbors* and *H. E. Burkett,* for appellant.

*R. J. Millard* and *J. C. Robinson, contra.*

Heard before MORRISSEY, C. J., LETTON and DAY, JJ., SHEPHERD, District Judge.

SHEPHERD, District Judge.

This is an action brought by the First National Bank of Bridgeport, the plaintiff below and appellant here, against the First National Bank of Hartington and the First National Bank of Coleridge, appellees here and defendants below. It is alleged in the petition that on the 20th day of Jan-

uary, 1921, and for a long time before that date, one Harry E. Dunlap was the sole owner of certain stock and farm machinery, and the half owner of certain grain and other personal property, all of the value of $3,053.81; that the defendants took possession of said property and wrongfully converted it to their own use; and that shortly thereafter Dunlap assigned his cause of action for said conversion to the plaintiff. Separately answering, the defendants generally deny the allegations of the petition, and further plead that said Dunlap held out to them and to the public generally that the property in question belonged to one J. H. Shaffer, by permitting the latter to have it in his possession and to manage it and to control it in all respects as if it were his own, etc. They further say that they lent money to Shaffer, supposing that he owned the property, and took mortgages thereon, which they afterward duly foreclosed, selling said property and properly applying and distributing the proceeds thereof. And they say that thereby said Dunlap was estopped to question said foreclosure and sale and to maintain this action. Replying, plaintiff avers that Shaffer was on Dunlap's farm, under an agreement to operate the same, by which the latter was to furnish all stock and equipment and the former was to receive as his remuneration a share of the crop and one-half of the increase of live stock. And it further avers in its replies that the operating of the farm was financed by Dunlap through it, the plaintiff bank, and that the money borrowed by Shaffer was used by him for his own benefit, and not for the common purpose or in any wise to the benefit of Dunlap. It also says that the First National Bank of Coleridge was informed before it took its mortgage, both by Dunlap and Shaffer, that the latter did not own the property and had no right to mortgage it.

Undoubtedly one may bail stock and personal property to another for the latter to use in running a farm or any other business without becoming liable to the loss of the same through its unauthorized conveyance by the bailee. *McGinley v. Brechtel*, 4 Neb. (Unof.) 552; *McClelland v. Scroggin*, 35 Neb. 536. If there is no absolute or conditional

sale feature involved, such a transaction does not come within the provision of section 2464, Comp. St. 1922. *McClelland v. Scroggin, supra.*

Such being the case, the defendants who took mortgages on the property described and afterward seized and sold it under such mortgages were required to prove, in order to successfully defend upon the doctrine of estoppel, the existence of facts in connection with the holding of Shaffer, other than that of mere possession, sufficient to mislead them in the exercise of ordinary care as to the true ownership, and also that they relied upon said facts. The mere giving over of the possession of the live stock and farm equipment to the lessee upon his farm was not enough to estop Dunlap from claiming the personalty when he learned that said lessee had fraudulently mortgaged the same to a third party, unless Dunlap did something or omitted to do something in connection therewith to mislead such third person as to its rightful ownership. No one can transfer a better title than he has. No presumption exists that a mortgagor owns the property covered by his mortgage, as between a party to the mortgage and a stranger. *Brooknau v. Clark,* 58 Neb. 610 ; *Rocky Mountain Fuel Co. v. Sparling Coal Co.,* 26 Colo. App. 260. The doctrine that that one of two innocent parties must suffer for the wrong of a third, who made the wrong possible by parting with the possession of a chattel, operates only to protect the person who exercises ordinary caution in taking a lien upon that chattel. The bank or the individual trusts as much or more in lending money upon chattels without careful investigation as to their title, as does the owner of such chattels in lending them to another for safe keeping or for mutual profit. *Chism v. Woods,* Hardin (Ky.) 531, 3 Am. Dec. 740.

It must be borne in mind, as the evidence discloses, that defendants well knew that farm owners and lessors were in the habit of furnishing stock and machinery to the tenant farmers who became their lessees. With this in view, and conceding for the purposes of argument that the personal property in question belonged to Dunlap and was

lent to Shaffer for his use upon his landlord's farm, what did Dunlap do or omit to do to lead the defendant banks to believe that it belonged to the tenant? From March 1, 1919, to January 1, 1921, he did nothing to indicate that any one save Shaffer had or claimed any interest in the property. During that period Shaffer bought and sold personal property and had his own bank account in the Hartington bank. Shaffer made two mortgages to the Hartington bank in 1919 and during said year that bank bought two others made by him. Shaffer made several mortgages to said bank in 1920, some of them being renewals. Shaffer sold corn by the direction of Dunlap and sent the proceeds to the latter. Shaffer made a mortgage note to the Coleridge bank January 23, 1920, covering all the 1919 corn on the place, both his share and Dunlap's share. Dunlap had access to a daily report of mortgages given in the county all through the year of 1919. It was sent to the Randolph bank where he was cashier during that period. He looked at the report for some purposes, but says that he did not examine it thoroughly and did not see the Shaffer mortgages listed. But he knew about the Coleridge bank mortgage on the corn from other sources. It seems that Shaffer had sold the 1919 corn, notwithstanding the mortgage, and the bank was pressing him. And in a letter of his under date of October 27, 1920, Dunlap wrote that he would arrange to get the money to straighten it up and told Shaffer to so advise the bank. In a subsequent letter dated November 19, 1920, he tells him to sell corn to pay the note. In none of these letters does he take Shaffer to task for mortgaging his property. In one of them he speaks of a "$2,000 note of ours" owed at Randolph. Dunlap also admits in his testimony that he wrote the Hartington bank December 6, 1920, saying that he had written Shaffer to sell corn, hogs or stock to pay the Coleridge bank. Dunlap permitted Shaffer to list the property in controversy for taxation in his own name, and failed to list it himself, though a schedule was presented to him for the listing of his personal property. It also appears that a portion of the proceeds of these mort-

gages was used by Shaffer to purchase a tractor and other machinery for use, inferably, on the farm.

All of these things in conjunction, perhaps some of them singly, would be sufficient, in the opinion of the court, to justify the submission of the case to the jury on the theory of estoppel, if it were shown in addition that because of them the defendants acted in lending their money and taking the mortgages as security. But it does not so appear from the evidence. None of the things mentioned were matters of inducement. Defendants made their loans to Shaffer because he had the property in his possession and handled it as his own on the farm. They did not take the trouble to look into the matter of ownership. They simply assumed that the property belonged to him. Though they knew that he was a renter occupying Dunlap's farm, and though Dunlap was easy to find and to be inquired of, they went ahead in apparent carelessness. Beste, the cashier of the Hartington bank, said that he attached no particular importance to the fact that Shaffer had given a small mortgage to Sorenson for machinery bought of the latter, and another to the garage man for an automobile. He acted because of the possession of the chattels by Shaffer. The Coleridge bank was content to loan on the corn because it was on the place occupied by Shaffer and in his possession. Neither defendant offered proof that it knew when it loaned that Dunlap had access to the daily report of mortgages, or that he had permitted Shaffer to list the property for taxation as his, or that Dunlap had failed to list it, or that Dunlap had any knowledge that Shaffer was making any mortgages.

In the rule relied upon by the defendants, *Merchants-Mechanics First Nat. Bank v. Cavers Elevator Co.*, 105 Neb. 321, it is stated, following *Grant v. Cropsey*, 8 Neb. 205: "Where one by his words or conduct wilfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing

at the same time." But in that case an estoppel was denied because there was no reliance upon and injury by the act pleaded, the court continuing in the opinion: "We understand it to be the rule of law that before a person can sustain the plea of estoppel against another he must have relied upon and been injured by the facts as pleaded. *Dent v. Smith,* 76 Kan. 381."

We hold, therefore, that the trial court was in error in submitting the case to the jury on the estoppel theory.

The court also erred, as pointed out in appellant's brief, in giving its instruction No. 2, to the effect that the burden was upon the plaintiff to prove every material allegation of its petition by a preponderance of the evidence. The stipulation made by the parties on trial relieved the plaintiff of a considerable part of this burden, namely, the burden of showing that the defendants sold the property and that the value of the same was as set forth in exhibit 1. We think this was prejudicial, though doubtless a mere oversight likely to happen in the hurry of the trial.

We disagree with the appellant that the exclusive ownership of the property was conclusively established in the plaintiff. The trial court properly submitted the question to the jury. There was enough in the letters and the actions of Dunlap to abundantly justify such submission.

Since the judgment must be reversed for the reasons stated, it seems unnecessary to consider the other assignments of error.

REVERSED AND REMANDED.