# THE PEOPLE OF THE TERRITORY OF UTAH, RESPONDENT, v. NELLIE BERLIN, APPELLANT.

CRIMINAL LAW.—LARCENY.—FRAUDULENT POSSESSION.—Where the owner of personal property is induced to part with the possession of it by fraud, still meaning to retain the right of property, and the person using the fraud has at the time the intention of converting the property to his own use without the consent of the owner, the crime is larceny. In such case the fraud, deceit or trick is the trespass, Smith, J., dissenting.

ID.—EVIDENCE.—PROOF OF OTHER CRIMES.—Where the defendant has offered evidence tending to show the making of an agreement to kill a certain person and that certain money was obtained possession of by means of a false statement that such person had been killed, it is not error to exclude testimony

that the person making the agreement has solicited another person to commit the same crime where such evidence is. offered as original, Smith, J., dissenting.

ID.—INSTRUCTIONS.—GENERAL EXCEPTION.—A general exception to, a charge as a whole will not avail to review the charge, if any part of it is correct, and a failure to except to the refusal of certain instructions to charge requested, precludes error being assigned thereon, Smith, J., apparently dissenting.

APPEAL from an order denying a new trial and a judgment of the district court of the fourth district, Hon. James, A. Miner, judge. The following is a full statement. of the record:

The indictment by apt words charged the larceny by Nellie Berlin from Lena Wright of $100. The bill of exceptions set forth the evidence on the trial as follows:

On the trial of said cause the people gave testimony tending to show the larceny of the $100 as set forth in the indictment and tending to sustain such charge, and the defendant introduced testimony in defense of the charge set forth in the indictment by the testimony of the defendant tending to show and prove that on and prior to the 19th day of February, 1893, the prosecuting witness Lena Wright entered into an agreement with the defendant and one Gilson whereby the said Gilson and defendant were to poison and kill one Mrs. Morris, of Ogden City, for which the prosecuting witness was to pay for said act of killing the sum of $100. The testimony of the defense tended to show that this agreement was entered into between the prosecuting witness Lena Wright and said defendant: that on the 19th day of February, 1893, the defendant and Gilson for the purpose of deceiving Lena Wright and obtaining the $100 caused to be published in one of the Ogden daily papers a statement to the effect that Mrs. Morris had died of heart disease.

"The defendant testified that this paper with the notice

of the death of Mrs. Morris was taken by the defendant and shown to the prosecuting witness, who delivered the $100 to the defendant pursuant to the agreement, believing that the said Mrs. Morris was dead. The prosecution offered testimony tending to contradict the above testimony. The testimony also tended to show that the prosecuting witness, Lena Wright and one Charles Morris had been criminally intimate and it had become notorious, and also that Mrs. Wright, the prosecuting witness, had requested the defendant several times to aid her in killing the said Mrs. Morris for the purpose of getting her out of the way. After the above testimony tending to show the above facts, the defendant offered to prove by the defendant Terrell, that the prosecuting witness, prior to time of the alleged offense, had tried to induce him, the said Terrell, to poison Mrs. Morris, for which the prosecuting witness would pay him $100, which he refused to accept. This testimony was rejected and the defendant excepted. Defendant also testified that they obtained the $100 as aforesaid, and she gave $75 to Gilson and kept the balance; that she entered into this scheme with Gilson to get the money from Lena Wright. Thereafter during the trial the defense submitted testimony tending to show that agreement had been made. The prosecution offered testimony tending to contradict defendant's proof."

The exception to the charge as given was general to the whole charge and pointed out no specific part; it was as follows: "To the giving of the said instructions, and to the giving of each of them the defendant then and there excepted at the time as follows: We except to each and every one of the instructions given by the court to the jury."

No exception whatever appeared in the record to the

refusal to give the instructions requested.   They are there-
fore not inserted.

The whole charge of the court as  given was as follows:

" This case presents a peculiar combination.   The defend-
ant is charged with the larceny of $100 of money or prop-
erty of Lena Wright.   You have heard the indictment read
and know what it contains.   Our statute defines larceny to
be as follows:   Larceny is the felonious stealing, taking,
carrying, leading or driving away of the personal property
of another.   It is divided into two degrees, grand and petit.
(Grand larceny was defined in the terms of the statute).
Therefore if you find the defendant guilty and find that
the property exceeded the value of $50, she would be guilty
of grand larceny.   If you find the property to be of less
value than $50, that is $50 or less, then the crime would
be petit larceny.   All that, of course, is dependent upon
the proof in the case.

" Larceny is the wrongful or fraudulent taking and
carrying away by any person of the personal goods of
another, from any place, with a felonious intent to con-
vert them to the use of the offender ,and make them his
own property, without the consent of the owner.   The
word felonious being explained to mean that there is no
color of right or excuse for the act; the intent must be to
deprive the owner, not temporarily, but permanently, of
his property.   A fraudulent taking with intent wholly to
deprive the owner of his property or with intent to destroy
it is sufficient, if the object be to effect some supposed
advantage, either to the party committing the offense or
to a third person.

" But according to all definitions, in order to constitute
the offense, there must be; 1st, a taking, 2d, a carrying
away; 3d, the taking and carrying away must be with a
felonious intent; 4th, it must be of the personal goods of
another; 5th, and without the consent or against the will

of the other. As I have said, there must be a taking proven, either actual or constructive; actual where the goods are actually taken out of the owner's possession against his will, or without his consent; it is constructive where the goods are obtained from the owner by fraud with intent to steal them, or where he, in fact, delivers the goods but still in law retains the title to them.

"There must be an actual taking or severance of the thing from the possession of the owner, for every larceny includes a trespass; if the party be not guilty of a trespass in taking the goods, he cannot be guilty of a felony in carrying them away. If the jury find that the defendant entered into an unlawful combination and conspiracy with Gilson to fraudulently obtain the $100 from Mrs. Wright, and that in pursuance of such conspiracy, which was unknown to Mrs. Wright at the time, Mrs. Wright was led to believe that Gilson or the defendant, or both, would take the life of Mrs. Morris in consideration of the payment of the $100 to Gilson or to the defendant by Mrs. Wright, such sum to be paid when the killing took place, and you find that the defendant induced Mrs. Wright to believe that such killing had taken place and that therefore the $100 was due to be paid to Gilson from her, and you find that the $100 was obtained by the defendant from Mrs. Wright in reliance upon the fact that the defendant or Gilson, or both, had killed Mrs. Morris, and that the killing had in fact not taken place, and you further find that the $100 was obtained from Mrs. Wright by the defendant by fraud, deceit and trickery in pursuance of such previous conspiracy, with intention on the part of the defendant at the time to steal the $100 and appropriate it to her own use or to the use of Gilson and to deprive Mrs. Wright wholly of the possession and ownership thereof, without her consent, then these facts when established are sufficient to constitute the crime of larceny.

The fraud in obtaining the possession of the money in such a case, if shown, takes the place of the trespass which is necessary to be shown, and if all the facts justify a felonious intent on the part of the defendant, the conversion of the money to defendant's own use is felonious.

"But if the money was delivered to the defendant by the owner's consent in pursuance of a previous agreement, or if it was voluntarily delivered to defendant, the owner intending to part with possession and title to it, then there is no larceny, even if fraud is established in obtaining it. You will note the distinction in the instructions, consider all the evidence, peculiar as it may be."

Then followed instructions upon the subject of reasonable doubt. The jury went out and then returned for further instructions and the whole charge was read over to them again.

*Messrs. Lessinger and Beckwith,* for the appellant. No brief on file.

*Mr. W. L. Maginnis,* Assistant U. S. Attorney, for the respondent. No brief on file.

ZANE, C. J.:

The defendant was convicted of grand larceny. The only question presented is whether or not the evidence justifies the verdict because the exception to the charge is wholly insufficient, On the trial the prosecution introduced evidence tending to prove that she stole $100 from Lena Wright, and the defendant introduced evidence tending to prove that she entered into a conspiracy with Lena Wright to kill one Mrs. Morris, for the consideration of $100, and that she caused a false statement to be published in a newspaper to the effect that Mrs. Morris had died of heart disease, which she showed to Mrs. Wright who relied upon the statement and paid her the $100 alleged to have been

stolen. The prosecution introduced evidence tending to rebut this evidence offered by the defendant. The court charged the jury and the defendant excepted generally to the charge, but excepted to no particular part. And, although we notice the point because counsel have argued it in their briefs, and have overlooked the fact that the exception was not specific, we do not wish to be understood as saying that the charge can be reviewed on such an exception.

The jurors might have understood from one part of the charge, without the qualification that followed, that they might find the defendant guilty of larceny, though Mrs. Wright paid her $100 intending to transfer both the possession and title, if such transfer was induced by her fraudulent representation and pretenses. The qualification was: "But if the money was delivered to the defendant by the owner's consent in pursuance of a previous agreement, or if it was voluntarily delivered to defendant, the owner intending to part with the possession and title to it, then there was no larceny even if fraud was established in obtaining it." We understand this to be a correct statement of the rule applicable to such fraudulent transactions, however the ingenuity of rogues may vary the facts in particular cases.

If the owner of personal property is induced by fraudulent representations to part with its possession intending also to part with the title, the transaction cannot be larceny. But if the person receiving the possession without the title has at the time a secret intention of converting it permanently to his own use and does so without the consent of the owner, he commits the crime of larceny.

After a review of the cases, Russell states the law as follows: "The correct distinction in cases of this description seems to be that, if by means of any trick or artifice the owner of property is induced to part with the possession

only, still meaning to retain the right of property, the taking by such means will amount to larceny; but if the owner part with, not only the possession of the goods but the right of property in them also, the offense of the party obtaining them will not be larceny, but the offense of obtaining goods by false pretenses." 2 Russell on Crimes 200 (9 ed.). To the same effect are: *Lewis* v. *The Commonwealth,* 15 Sergeant and Rawle, 93; *Commonwealth* v. *Eichelberger*, 119 Pa. State, 254; 2 Bishop on Criminal Law, sec. 918; *The People* v. *Shaw*, 57 Mich. 403. Though a part of a charge considered alone might mislead a jury, that will not be reversible error if when the whole is considered the law of the case is stated with sufficient certainty and clearness. We do not believe that the jury was misled as to the law of this case by the charge of the court, and as only a general exception was taken to it, we have gone a great distance in even noticing the objection.

A number of requests to charge were asked by the defendant, but the law applicable to the case, so far as it was necessary to state it to the jury, was embraced in the charge of the court. None of the refusals were excepted to by the defendant. The bill of exceptions shows that the evidence on every point was conflicting. The jury from their verdict evidently believed the testimony of the prosecution. Judgment is affirmed.

BARTCH, J., concurred.

SMITH, J. *(dissenting):*

I do not concur in the opinion of a majority of the court in this case, and as it seems to me that the opinion of the majority evades rather than decides the questions raised, I am constrained to express my views.

The defendant was convicted of grand larceny. There was evidence for the prosecution tending to show that the

defendant stole $100 from the possession of Lena Wright on or about February 19, 1893.

Defendant introduced evidence tending to show that on and prior to February 19, 1893, Lena Wright entered into an agreement with defendant and one Gilson whereby Gilson and defendant were to poison one Mrs. Morris for which Lena Wright was to pay to Gilson and defendant $100 when the killing was done. On February 19, 1893, for the purpose of deceiving Mrs. Wright and obtaining the $100, defendant and Gilson caused a notice to be published in the morning paper in Ogden that Mrs. Morris had died the previous night of heart failure; that defendant took the paper to Mrs. Wright, called her attention to the notice of death of Mrs. Morris, giving her to understand that defendant had poisoned her, and that Mrs. Wright, believing Mrs. Morris had been poisoned, paid defendant the $100 as promised. Defendant's testimony also tended to show that Lena Wright and the husband of Mrs. Morris were criminally intimate, and that Mrs. Wright was desirous on that account of getting Mrs. Morris out of the way.

The defendant offered testimony to show that Mrs. Wright, the prosecuting witness, tried to hire another party named Terrell to poison Mrs. Morris at about the time of the alleged agreement with defendant, and had offered Terrell $100 for the service.

This testimony was objected to by the prosecution, and the objection was sustained, to which defendant excepted. This ruling is assigned here as error.

The court instructed the jury as follows, omitting the mere formal parts:

"If the jury find that the defendant entered into an unlawful combination and conspiracy with Gilson to fraudulently obtain the one hundred dollars from Mrs. Wright in question, and that in pursuance of such conspiracy— which was unknown to Mrs. Wright—Mrs. Wright was

lead to believe that Gilson or defendant or both would take the life of Mrs. Morris in consideration of the payment of one hundred dollars to Gilson or to the defendant by Mrs. Wright, such sum to be paid when such killing had taken place, and you find that the defendant induced Mrs. Wright to believe that such killing had taken place, and that therefore the one hundred dollars was due to be paid to Gilson from her, and you find that the one hundred dollars was obtained by the defendant in reliance upon the fact that defendant or Gilson or both had killed Mrs. Morris, and that the killing in fact had not taken place, and you further find that the one hundred dollars was obtained from Mrs. Wright by defendant by [ this ] [1] fraud, deceit and trickery in pursuance of such previous conspiracy with intention on the part of defendant at the time to steal the same and appropriate it to her own use or the use of Gilson, and to deprive Mrs. Wright wholly of the possession and ownership thereof without her consent, then these facts are sufficient to constitute the crime of larceny.

" The fraud in obtaining the possession of the money in such a case, if shown, takes the place of the trespass which is necessary to be shown, and if all the facts justify a felonious intent on the part of the defendant, the conversion of the money to defendant's use is felonious; but if the money was delivered to the defendant by the owner's consent in pursuance of a previous agreement, or, if it was voluntarily delivered to defendant, the owner intending to part with possession and title to it, then there is no larceny even if fraud is established in obtaining it. You will note the distinction made in the instruction, consider all the facts and the evidence in this case, peculiar as it may be."

The defendant excepted to the giving of this charge on account of its misleading character and assigns the giving of it as error.

---

[1] Not in original charge and not in record.

There is no other portion of the charge that has any bearing on this question.

In the opinion of the majority of the court no notice is taken of the exception to the ruling as to the admissibility of the testimony showing that the prosecuting witness had at about the time of the alleged agreement with defendant tried to hire one Terrell to kill Mrs. Morris; this fact was attempted to be shown by Terrell himself and the objection was wholly on the ground of materiality. As to the charge of the court, it will be seen from the recitation of it at length above, that in the opinion of the majority three or four lines are selected out from the conclusion of it and because they embody a substantially correct statement of a legal proposition it is said that the jury was not misled.

I may be exceedingly obtuse, and do not profess to possess any unusual powers of perception, and this may account for my failure to understand what rule the court below intended to lay down for the guidance of the jury. But true it is that if I were called upon to say from the instruction quoted what rule was declared, I confess at once that I could not do it. And I am constrained to believe that no member of this bar or of this court, with all due respect to the other members of it, can tell what the court below intended to tell the jury was the rule of law in this case, and yet we are told that it must not be supposed that a jury of laymen not learned in the law were misled by this instruction. As I understand it, the opinion of the majority of the court concedes that the charge was in a large part erroneous, but they hold that it was not misleading. Let us see; the jury are first told, in effect, that if Gilson and defendant conspired to cheat Mrs. Wright by pretending to accept employment to kill Mrs. Morris, that they caused the death of Mrs. Morris to be announced and falsely pretended they had killed her and claimed the payment of the hundred dollars promised, and

Mrs. Wright, relying on this false representation that Mrs. Morris was dead when in fact she was not, paid defendant the $100 dollars and that defendant received it intending to appropriate it to her own use, that then this was larceny. In the same breath they were told that if the owner of the money delivered it to defendant pursuant to a previous agreement, intending to part with the possession and title to it, then there is no larceny.

This is the substance of the instruction stripped of all needless verbiage, and if it is not contradictory, I am unable to understand the English language. It was not contradictory in some mere formal or immaterial part. I think it must be admitted by all that if the jury followed the first rule declared in the instruction they must have found against defendant under any circumstances, because it mattered not whether the testimony given on the defense was true or false, she was guilty anyhow. I am clearly of the opinion that if the jury believed the testimony offered in behalf of defendant, she was entitled to an acquittal upon this charge. In other words, if Mrs. Wright gave the money to defendant in payment for a supposed service the taking of it could never be larceny, and defendant was entitled to have the jury pass on the question as to whether her version of the affair was true or not. I am quite positive that under the instructions as given no man can tell whether this has ever been done or not.

If because the court correctly stated a legal proposition in a few lines of an instruction while it elaborated an erroneous one at great length, it must be held that the entire instruction fairly states the law and is not misleading, I do not see how a case can ever be reversed for error in the charge of the court, because it would be an extreme case indeed where we might not pick out a few lines somewhere in the charge that stated a legal proposition correctly.

The rule that when a charge is erroneous in one part and injurious to a defendant the mere stating of a correct rule in another part does not cure it, is established by every authority that is entitled to respect. *Brown* v. *McAllister*, 39 Cal. 577; *Aquire* v. *Alexander*, 58 Cal. 21; *Frederick* v. *Allgaier*, 88 Mo. 602; *Knowlton* v. *Fritz*, 5 Ill. App. 217; *Grand Rapids* v. *Monroe*, 47 Mich. 152; *Phillips* v. *Jamison*, 51 Mich. 153; *Murray* v. *Commonwealth*, 79 Pa. St. 311; Thompson on Trials, sec. 2326.

In this case the error was emphasized, if possible, by the fact that the jury were in doubt as to what the court had declared the law to be and after being out some time they returned into the court and at their request this objectionable instruction was again read over to them. In view of all this a majority of this court cannot believe and do not believe the jury was misled. If they were not then I do not see how a jury can be misled by an erroneous charge of the court. I think the only safe and proper rule is that where the charge is erroneous in a substantial part, by which the testimony of one party is necessarily limited in its effect before the jury to the detriment of such party, that then such error is prejudicial and demands a reversal of the cause without regard to the fact that the court in some other part of the charge stated the law correctly.

The rule is stated in Thompson on Trials, at sec. 2326, as follows:

"Instructions should not be so framed as to be capable of two interpretations, one correct in point of law or in relation to the facts and the other incorrect; such instructions are well calculated to mislead the jury. The giving of instructions which are inconsistent with or contradictory to each other is error, for the reason that the jury will be as likely to follow the bad as the good and it cannot be known which they have followed, and which way soever they go the judgment must be reversed. Therefore an

erroneous instruction is not cured by another instruction on the same subject which is correct." See, also, *Mackey* v. *People*, 2 Col. 18; *Rice* v. *Olin*, 79 Pa. St. 391.

There is one feature of the instructions given that were it not so serious a matter would be ludicrous. The court told the jury: "And you find that one hundred dollars was obtained by the defendant in reliance upon the fact that defendant or Gilson or both had killed Mrs. Morris, and that the killing in fact had not taken place, and you further find that the one hundred dollars was obtained from Mrs. Wright by defendant by this fraud, deceit and trickery. * * * The fraud in obtaining the possession of the money in such case, if shown, takes the place of trespass which is necessary to be shown, etc. * * *"

It will be seen that the fraud, deceit and trickery referred to was the false representation of defendant that she had murdered Mrs. Morris, and the jury were then told that this fraud would supply the place of the trespass necessary to be shown to complete the crime of larceny.

In other words Mrs. Wright in paying over this blood money was imposed upon, in that she was induced to and did believe that it had been earned when it was not. If the court, as indicated by this instruction, wanted to give to the bargain between defendant and Mrs. Wright the dignity of a contract, the violation of which would be a wrong or constitute any element of crime—inasmuch as Mrs. Morris was still alive, and it was not shown to be beyond the power of defendant to perform the bargain, it would have been more in accord with ordinary judicial procedure to have given judgment for specific performance of the contract to kill, instead of convicting defendant of a crime that to my mind was not involved either in the performance or breach of the contract.

I think, for error in the charge of the court, the judgment below should have been reversed and a new trial

granted. I do not deem it necessary to enlarge upon the exceptions to the rejection of Terrell's testimony. It was admissible if the proper foundation was laid by asking Mrs. Wright whether she had made such offer to Terrell, as he was produced to prove.