IRVING SNYDER, DOING BUSINESS AS DENVER CAR & TRUCK MARKET, APPELLANT, v. HARRY LINCOLN, DOING BUSINESS AS LIBERTY CAR COMPANY ET AL., APPELLEES.

35 N. W. 2d 483

Filed December 29, 1948.   No. 32490.

*Levin & Brodkey,* for appellant.

*Wear, Boland & Nye* and *Robert E. McCormack,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CHAPPELL, J.

This was an action to replevin a car. Tried to the court, jury waived, defendants were awarded a judgment. Motion for new trial was overruled, and plaintiff appealed to this court.

In the final analysis, the primary question presented is whether the car was sold by plaintiff or was stolen from plaintiff. Concededly, if plaintiff sold and delivered the

car to a fraudulent vendee as defendants contend, then the law would protect innocent purchasers, and defendants, if within that category, would be entitled to recover. On the other hand, if, as plaintiff contends, the car was stolen from plaintiff, then innocent purchasers could acquire no title which the law would protect, and plaintiff would be entitled to recover. We sustain plaintiff's contentions.

As stated in Parr v. Helfrich, 108 Neb. 801, 189 N. W. 281: "It is well settled that when property is obtained from its owner by fraud, and the facts show a sale by the owner to the fraudulent vendee, an innocent purchaser of the property from the fraudulent vendee will take good title. The inquiry is: Did the owner intend to transfer the ownership as well as the possession of the property? If he did, there was a contract of sale. The essential thing in the passing of title to personal property is that the vendor and the vendee intend that the title shall pass, and not what induced them to have that intention." See, also, Sullivan Co. v. Larson, 149 Neb. 97, 30 N. W. 2d 460.

The opinion in Parr v. Helfrich, *supra,* also approved a statement appearing in Rowley v. Bigelow, 12 Pick. (Mass.) 307, to the effect that: "The difference between the case of property thus obtained, and property obtained by felony, is obvious. In the latter case, no right either of property or possession is acquired and the felon can convey none."

As we view the record, it will be unnecessary to discuss at length or attempt to make specific application of the Colorado statutes relating to the execution and delivery or assignment of certificates of title and certificates of ownership of motor vehicles, or to determine whether or not defendants or either of them were innocent purchasers for value.

Under rules of law heretofore stated, and hereafter recited, our conclusions must be based entirely upon the factual situation appearing in the record.

The evidence is not in dispute. It appears in substance that on August 30, 1947, plaintiff, a licensed used car dealer in Denver, Colorado, was the owner and holder of a valid Colorado certificate of title to a 1946 Chevrolet Aero Sedan, the car involved.

On that date, Saturday afternoon, at about 2:30 p. m., a person unknown to plaintiff but identified as R. Bryan Owen or R. E. Owen, a blond, light-complexioned man, about 29 or 30 years old, 5 feet 9 inches tall, weighing about 175 pounds, and dressed in a United States Navy jacket and blue pants, came upon plaintiff's car lot. There he looked over three or four cars and asked one of plaintiff's salesmen for permission to try out the car in question. It was already serviced for driving, and such permission was granted. Thereupon Owen drove the car away and returned in 10 or 15 minutes. He then said he liked the car but wanted to show it to his wife at a given address in Denver, later found to be fictitious and nonexistent. The salesman hesitated, and Owen offered to leave his check for the purchase price. Whereupon, in the presence of another witness, the salesman told Owen in substance that he could not and would not accept the check unless it was certified, and that plaintiff could not and would not sell or deliver the car or the title thereto until and unless the check was certified, but that Owen could take the car and show it to his wife if he desired to do so.

No certificate of title or certificate of ownership was ever given or assigned to Owen by plaintiff as required by the Colorado statutes, and he was never given any bill of sale, mileage certificate, or any other paper or document by plaintiff as evidence of ownership or that a contract of sale had been made. Owen simply left his check, without certification, drove the car away, ostensibly to show it to his wife as permitted by plaintiff, and never returned.

Two or three hours after Owen had left, plaintiff notified the Denver Police Department, and on Tuesday,

Sunday and Monday Labor Day intervening, plaintiff also notified the Federal Bureau of Investigation. The check was never endorsed or deposited by plaintiff, but on Tuesday, just before 3 p. m., it was learned that there was no such account. Owen had not been apprehended at the time of trial of the case at bar:

On September 5, 1947, R. E. Owen, purportedly from Columbus, Georgia, gave D. B. Pearson Motors of Kansas City, Missouri, an ordinary bill of sale for the car, for which D. B. Pearson gave Owen a check for $1,850, which was endorsed "R E Owen," and marked paid on September 6, 1947.

Neither D. B. Pearson, doing business as D. B. Pearson Motors, nor defendant Harry Lincoln, doing business as Liberty Car Company, testified as witnesses. However, Jack Lincoln, father of Harry Lincoln, and an employee of his son's company, testified that he purchased the car for his son from D. B. Pearson Motors in Kansas City on September 5, 1947, the same day it was delivered by Owen to D. B. Pearson Motors. A check from Liberty Car Company, by Harry A. Lincoln, payable to D. B. Pearson Motors, for $2,125, dated September 5, 1947, marked paid on September 24, 1947, appears in the evidence.

Jack Lincoln testified that at the time he purchased the car he saw the bill of sale given by Owen, but never saw any certificate of title for the car, and that none was then delivered to him. Neither did he inquire who owned the car ahead of Owen. D. B. Pearson told him the certificate of title was then in the North Kansas City Bank as collateral for a loan of money on cars, and that he would get the same and attach it to the Liberty Car Company's check for return when it was cashed. Such statement, if made, was evidently false.

In that connection, the record discloses that on September 20, 1947, R. E. Owen of 1892 Alton, Mascage County, Columbus, Georgia, ostensibly under two signatures appearing to be entirely different from those alike

and appearing on his check left with plaintiff, his bill of sale given D. B. Pearson Motors, and his endorsement on the check given to him by D. B. Pearson, made application for Missouri certificate of "Title Number 910812" without surrendering any title number or attaching the certificate of any dealer or vendor. Therein the applicant gave his "Source of Ownership" as Kellen Motor Company, 811 Broadway, Columbus, Georgia, for cash, under date of August 17, 1947, which, it will be noted, was 13 days before the car was taken by Owen from plaintiff. However, across the face of the application we find both written and stamped thereover, in large letters, the words "Cancel," together with the stamped date "Sep 22 1947."

However that may be, the record also discloses that on September 20, 1947, D. B. Pearson Motors, by D. B. Pearson, made application for the issuance of Missouri certificate of "Title Number 910813" and in doing so "Surrendered Title Number Ga. B. of Sale." Therein, the applicant gave its "Source of Ownership" as R. E. Owen, 1892 Alton, Columbus, Georgia, for cash, under date of September 5, 1947. The "Certificate of Dealer or Vendor" thereon is not dated, but bears the purported signature of R. E. Owen, which is the same in character as those appearing on the purported application of R. E. Owen for Missouri certificate of "Title Number 910812" heretofore described. The "Certificate of Dealer or Vendor" also has written in the left-hand corner thereof "Subscribed & sworn to before me this 19 day of Sept 1947 Dean B. Pearson." Also stamped thereon appear the words "My Commission Expires July 22, 1951," but no seal appears thereon. It will be noted, also, that no witnesses in the case at bar ever identified or verified in any manner the genuineness of the signatures of R. E. Owen appearing upon the foregoing applications.

A Missouri certificate of title, issued upon the basis of the last foregoing application, does not appear in

the record but doubtless under the evidence we may conclude that one was issued to and assigned by D. B. Pearson Motors to Liberty Car Company, because on September 27, 1947, the Liberty Car Company obtained a Nebraska certificate of title, upon the basis of "Previous No. 47 Missouri Cert of Title 910813."

On October 14, 1947, defendant Chauncey Eugene Wilson, engaged in the hay, grain, and livestock business at Gothenburg, gave his check to the Liberty Car Company for $2,200, paid October 17, 1947, for purchase of the car involved. Also, on October 14, 1947, Liberty Car Company, by Harry Lincoln, assigned the Nebraska certificate of title to Wilson, under the notarial seal of and an acknowledgment taken by Jack Lincoln.

When Wilson purchased the car, it was in a closed garage at the home of Harry Lincoln's brother and not in Liberty Car Company's place of business, as were two other cars purchased at the same time. The Federal Bureau of Investigation eventually located the car in Wilson's possession at Gothenburg, and instructed him not to dispose of it. On October 24, 1947, plaintiff's attorney called Wilson by telephone, who informed the attorney that he had the car, having purchased it from Liberty Car Company. The attorney then informed Wilson that the car had been stolen from plaintiff, who wanted possession of it, whereupon Wilson agreed to and did bring the car to Omaha, where it was taken by replevin in the present action.

Defendants admitted that plaintiff did not deliver Owen any certificate or other evidence of title or ownership, as required by the Colorado statutes, but contended that a sale could be made and that the title to the car could pass without the execution, delivery, and recording of such instruments, since Colorado did not have any statutory provision such as section 60-105, R. S. Supp., 1947, hereinafter discussed.

Without further discussion, we may assume that contention to be true, solely for the purpose of argument,

and still find that defendants are not in position to prevail, because there was no competent evidence that plaintiff intended to or ever did sell, pass the title, or transfer the ownership of the car to Owen in any manner.

True, plaintiff gave him possession of the car to show it to his wife, but gave him no title or right of ownership or power to sell it. It is generally the rule that mere possession of a chattel, by whatever means acquired, if there is no other evidence of ownership or of authority from the owner to sell, will not, in the absence of controlling estoppel, enable one to give good title as against the true owner, even to a buyer for value in good faith, and without notice of the want of title in the seller. See First Nat. Bank of Bridgeport v. First Nat. Bank of Hartington, 111 Neb. 441, 196 N. W. 691.

There are no controlling elements of estoppel appearing in the case at bar. Plaintiff was guilty of no conduct precluding him from denying Owen's authority to sell the car, or transfer title thereto. Rather, from the record before us we can only conclude that Owen obtained possession of the car by fraudulent representations and larceny by trick or device. In that manner, he received the mere possession thereof without the title or any right of ownership or authority to sell, having at the time a secret intention of converting it permanently to his own use without the consent of plaintiff, and he carried out that intention.

As stated in State v. Joseph, 63 Utah 1, 221 P. 850, quoting with approval from People v. Berlin, 9 Utah 383, 35 P. 498: " 'If the owner of personal property is induced by fraudulent representations to part with its possession intending also to part with the title, the transaction cannot be larceny. But if the person receiving the possession without the title has at the time a secret intention of converting it permanently to his own use and does so without the consent of the owner, he commits the crime of larceny.' " See, also, Swartz v. White, 80 Utah 150, 13 P. 2d 643.

Also, as stated in Georgis v. State, 110 Neb. 352, 193 N. W. 713: "If a person obtains possession of money from the owner by fraud, with the intent to appropriate the same to his own use and deprive the owner of his property therein, the taking is larceny. While it is generally true that in larceny the taking must be a trespass against the owner's possession, yet, where fraud is practiced to obtain possession, no actual violence is necessary, for the fraud takes the place of violence. Crum v. State, 148 Ind. 401; State v. Dobbins, 152 Ia. 632; 25 Cyc. 40." See, also, State v. Hall, 76 Ia. 85, 40 N. W. 107, 14 Am. S. R. 204.

It was the larceny, and not a sale by or any negligent act of plaintiff, which was the proximate and effective cause of injury to the parties. The general rule is "where one of two innocent persons must suffer by the acts of a third, he whose conduct, act, or omission enables such third person to occasion the loss must sustain it if the other party acted in good faith, without knowledge of the facts, and altered his position to his detriment." 31 C. J. S., Estoppel, § 103, p. 325. However, the foregoing "rule does not apply in cases where the wrong was accomplished through the instrumentality of a criminal act, it being held that in such cases the crime, and not the negligent act, is the proximate cause of the injury." 31 C. J. S., Estoppel, § 103, p. 330. See, also, 21 C. J., Estoppel, § 176, p. 1172; Schumann v. Bank of California, N. A., 114 Or. 336, 233 P. 860, 37 A. L. R. 1531.

As we view it, the applicable rule is that one obtaining possession of property by larceny cannot convey good title even to an innocent purchaser for value.

The foregoing applicable propositions of law are set forth and discussed at length in the authorities cited in the annotation to 1 Uniform Laws Annotated, Sales, § 23, p. 191, and pocket parts supplement thereto, p. 174. They are too numerous to cite at length in this opinion.

Finally, defendants argued, without citation of any authority, that the Nebraska certificate of title held by

Wilson was conclusive of his ownership and right to possession of the car. We cannot so hold.

Their argument was premised upon section 60-105, R. S. Supp., 1947, which provides in part: "No court in any case at law or in equity shall recognize the right, title, claim or interest of any person in or to any motor vehicle, * * * sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued, in accordance with the provisions of this act."

The plaintiff in Mock v. Kaffits, 75 Ohio App. 305, 62 N. E. 2d 172, a replevin action to recover a stolen automobile, made a like claim. That case is factually and legally similar to the case at bar, and Ohio has a statute identical in all material respects with the provisions of the Nebraska statute above set forth. In the opinion, the Ohio court said: "It is therefore clear that theft, misrepresentation and fraud surrounded the conception of plaintiff's source of title. And this is true even though he is an innocent purchaser for value. * * *

"Just what is the purpose of the Certificate of Title Act? The answer is found in Automobile Finance Co. v. Munday, 137 Ohio St., 504, 521, 30 N. E. (2d), 1002, wherein Judge Turner stated that 'the very purpose of the law is to protect ownership against fraud.' If plaintiff's theory be adopted, it must be perceived that the avowed purpose of the act would be frustrated. It would become a shield to the thief's criminal act and would stamp with the law's approval the source of title which flows from him. It would surely follow that Ohio might be made the dumping ground for stolen cars."

Be that as it may, in Blixt v. Home Mutual Ins. Co., 145 Neb. 717, 18 N. W. 2d 78, plaintiff relied upon the foregoing statutory provision. In the opinion, this court said: "The provision goes far beyond a mere regulation under the police power. It amounts to an invasion of the right of contract, the impairment of rights of property and a restriction upon the right of the courts to weigh and

consider evidence and to make determinations with regard to title and ownership of property and contractual rights and obligations.

"The plaintiff has cited no case and we have found none the effect of which is to say that the legislature is empowered, under the guise of a police regulation, to validly invade the field of contract and property rights and to restrict the courts in the exercise of their proper functions.

"We must therefore hold that this statutory provision may not be considered as in aid of plaintiff's cause of action. The case must turn on other considerations."

For the reasons heretofore stated, we conclude that the judgment of the trial court was not supported by any competent evidence, and that being clearly wrong, it should be and hereby is reversed.

REVERSED.