BILL E. BURNS, APPELLANT, v. COMMONWEALTH TRAILER SALES, A CORPORATION, ET AL., APPELLEES.

79 N. W. 2d 563

Filed December 7, 1956. No. 33991.

*Clinton & McNish,* for appellant.

*Davis, Healey, Davies & Wilson* and *Robert A. Barlow,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This in an action for conversion by the defendant Commonwealth Trailer Sales, a corporation, of a house trailer alleged to belong to the plaintiff, Bill E. Burns. The defendant I. L. Pindell is alleged to have contributed to the conversion by wrongfully issuing, as county clerk of Cheyenne County, Nebraska, a certificate of title to the house trailer to Commonwealth Trailer Sales, thereby facilitating the conversion. The trial court denied a

motion for a directed verdict for the plaintiff and sustained a similar motion for the defendants. The cause of action was thereupon dismissed and the plaintiff appeals.

On March 30, 1953, plaintiff was the owner of the house trailer involved in this action. He purchased the house trailer in October 1951 for approximately $5,480. He paid $2,000 in cash and gave a mortgage for the balance, which with interest, insurance, and finance charges amounted to $3,876. On March 30, 1953, the mortgage had been reduced to $2,340. During the month of March 1953, plaintiff was in the county jail at Stockton, Kansas, and was about to commence the serving of a sentence in the state penitentiary. Because of this fact, plaintiff desired to make some disposition of the house trailer. Negotiations were commenced with Paul D. Hixson, the husband of plaintiff's niece. The record shows that Hixson was unable to purchase the house trailer and, because of the shortness of time, a transaction was entered into which brought about the present litigation.

Plaintiff authorized his brother, A. B. Burns, to consult with a lawyer about the matter. The lawyer prepared a power of attorney which he gave to the plaintiff, who executed it. It provided in part: "BE IT KNOWN THAT I, * * *, Bill E. Burns, of Plainville, Kansas, hereby appoint Paul D. Hixson, of Plainville, Kansas, my attorney in fact, for me and in my name and stead to rent, sub-let, move, care for, maintain, collect rent, keep up insurance and collect for any damages to my property or trailer house located in Plainville, Kansas, and to make the payment on same when due and to do anything and all things necessary in regard to said property and trailer house, * * *. Also, that my said attorney in fact shall have the right and authority to buy trailer tags and register said trailer for me and in my behalf as fully as though I could so do; and in fact shall have the authority to do and perform all acts necessary in the

execution of the powers hereby granted, as fully as I might do if personally present."

The power of attorney was delivered to Hixson on March 30, 1953, together with the manufacturer's statement of origin. The plaintiff executed the second assignment on the back of the latter instrument at the same time that he signed the power of attorney and as a part of the same transaction. The monthly payments on the house trailer were $110 per month, which Hixson paid up to and including July 1954. On or about September 14, 1953, Hixson procured a certificate of title to the house trailer from the county treasurer at Stockton, Kansas, in the name of Bill E. Burns as owner, by Paul D. Hixson, under the authority of the power of attorney. The evidence shows that on August 14, 1954, the title to the house trailer was assigned to the defendant, Commonwealth Trailer Sales, Sidney, Nebraska, such assignment being executed by "Bill E. Burns by Paul D. Hixson. Power of Att. (Seller)." Commonwealth Trailer Sales made application to I. L. Pindell, the county clerk of Cheyenne County, Nebraska, for a certificate of title, based on the certificate of title issued by the county treasurer at Stockton, Kansas, and the power of attorney held by Hixson. The certificate of title was issued.

The evidence shows that in July 1954, Hixson discovered that there was a balloon payment in the amount of $617.33 due on the house trailer in addition to a monthly payment of $110. He was informed by the holder of the mortgage that the balance due on the mortgage would not be renewed. Hixson stated that he could not raise the money and that he traded in the house trailer on a new one, the balance of the mortgage on the house trailer being included in the mortgage on the new house trailer. The old mortgage, on which $821 was due, was paid off by Commonwealth Trailer Sales. The evidence shows that Hixson paid $6,395 for the new trailer. He was allowed $3,825 for the old

trailer. The amount due on the old mortgage, together with interest, insurance, and finance charges, fixed the amount of the mortgage on the new house trailer at $4,400, no cash payment other than the trade-in value of the old trailer having been made. Hixson took the title to the new trailer in his own name and claims to be its sole owner.

It is the contention of the plaintiff that he did not convey the title to the house trailer to Hixson and that the power of attorney clearly shows that he did not purport to do so. The Commonwealth Trailer Sales contends that the second assignment on the manufacturer's statement of origin and the power of attorney placed the title in Hixson and there was not, therefore, a conversion of the house trailer by it. The defendant Pindell contends that he properly issued a certificate of title to Commonwealth Trailer Sales based on the Kansas certificate of title and the power of attorney held by Hixson. In addition thereto, Hixson contends that he purchased the house trailer from the plaintiff for $500, which he admits has not been paid. If this was the fact, we fail to see any necessity for the power of attorney. Hixson also states that he did not know the amount due on the mortgage lien when he took the purported title on March 30, 1953. He says that he was informed by the plaintiff that if he made the payments of $110 per month until October 1954, he would own the house trailer free of the mortgage lien. He says that the purpose of the power of attorney was to permit him to keep the title in plaintiff's name, this for the reason that plaintiff did not want the mortgage lienholder to know about the transfer as it would injure his credit. It is shown by the record that all parties connected with the transactions here described were at all times familiar with the power of attorney and its contents. The plaintiff pleads the statutory and case law of the State of Kansas purporting to show that the Kansas title was void. Plaintiff pleads further that the issuance of a title to the Commonwealth Trailer

Sales by the county clerk of Cheyenne County, Nebraska, was contrary to the laws of Nebraska, and that the purported title was wholly void.

The power of attorney hereinbefore quoted shows clearly by its own terms that the title to the house trailer was to remain in the plaintiff. Authority was given Hixson to rent, sublet, move, care for, maintain, collect rent, keep up insurance and collect for any damages to his property or house trailer, and to make the payments on same when due. It gave Hixson the right and authority to buy trailer tags and register the house trailer for the plaintiff, and to do and perform all acts necessary in the execution of the powers granted. Nowhere does it authorize a sale of the house trailer. As we have heretofore said, the power of attorney would have been unnecessary if Hixson became the owner on March 30, 1953. Since the power of attorney accompanied the purported assignment and was in fact treated by all concerned as the extent of Hixson's authority, we are required to hold that all parties had notice of Hixson's lack of authority to sell the house trailer. With reference to the construction to be given to a power of attorney, this court has said: "A power of attorney must be construed in accordance with the rules for the interpretation of written instruments generally. * * * Where the intention of the parties appears from the language employed in the power of attorney, that intention should prevail, and a strained interpretation should never be given to defeat it. * * * The object of the parties must always be kept in view, and where the language will permit that conclusion must be carried out that will support instead of defeat the purpose of the instrument. Indeed, according to the established rule, powers of attorney will be given a narrow and restricted construction, and will be held to grant only those powers which are expressly specified and such others as are essential to carry into effect the expressed powers. Every general power implies every particular power necessary to its

exercise, or performance." Graham Ice Cream Co. v. Petros, 127 Neb. 172, 254 N. W. 869.

The record shows that the manufacturer's statement of origin was issued to Brooks Trailer Sales, Oklahoma City, Oklahoma, by Sportsman Industries, Inc., Hammond, Indiana. Brooks Trailer Sales, a dealer, assigned the manufacturer's statement of origin to the plaintiff, Bill E. Burns, as the purchaser of a new unregistered house trailer therein described, subject to a lien of $3,876. By written assignment appearing on the back of the manufacturer's certificate of origin, plaintiff assigned the statement of origin and house trailer to Hixson. It appears that under the law of the State of Kansas plaintiff could transfer title to the house trailer only by certificate of title. Plaintiff had not obtained a certificate of title in his own name and it appears clear to us that he gave the power of attorney to Hixson to obtain such title in the name of the plaintiff. The Kansas certificate of title was issued to plaintiff, the only person entitled to obtain a certificate of title on the assigned manufacturer's statement of origin. § 8-135, General Statutes of Kansas, 1949. It appears that the certificate of title was properly issued to the plaintiff, Bill E. Burns, in the State of Kansas, although we do not think that question is important in the present litigation.

The record shows, therefore, that at the time of the transaction between Hixson and the defendant Commonwealth Trailer Sales, the title to the house trailer was in the plaintiff, Bill E. Burns. Hixson purported to transfer the title to the house trailer to Commonwealth Trailer Sales, exhibiting the power of attorney as his authorization to act for Burns. But, as we have said, the power of attorney executed by Burns did not authorize Hixson to transfer the title or sell the house trailer. It is clear therefore that Commonwealth Trailer Sales accepted the purported transfer of title with knowledge of Hixson's want of authority to transfer the title or sell the house trailer. The purported transfer of the

title by Hixson and his purported sale of the house trailer were wholly void. The statutes regulating the issuance of certificates of title to motor vehicles were enacted for the protection of owners and lienholders, and the public, against fraud. Securities Credit Corp. v. Pindell, 153 Neb. 298, 44 N. W. 2d 501; Snyder v. Lincoln, 150 Neb. 580, 35 N. W. 2d 483. It is provided in part by section 60-105, R. S. Supp., 1955, as follows: "No person, * * * acquiring a motor vehicle, * * * from the owner thereof, * * * shall acquire any right, title, claim, or interest in or to such motor vehicle, * * * until he shall have had issued to him a certificate of title to such motor vehicle, * * * or delivered to him a manufacturer's or importer's certificate for the same; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or manufacturer's or importer's certificate for such motor vehicle, * * * for a valuable consideration. No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle, * * * sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title * * * duly issued, in accordance with the provisions of this act."

In Loyal's Auto Exchange, Inc. v. Munch, 153 Neb. 628, 45 N. W. 2d 913, this court said: "A purchaser who receives possession of an automobile without obtaining the certificate of title thereto, as required by our statute, acquires no title or ownership therein. A subsequent purchaser for value of the automobile, who obtains the certificate of title by complying with the statutory requirements relating thereto, obtains the title and ownership thereof. His title and ownership are superior to any rights the first purchaser may have."

The record shows that plaintiff held a valid certificate of title under the Kansas law. Hixson purported to assign such title to Commonwealth Trailer Sales under the authorization contained in the power of attorney.

The Commonwealth Trailer Sales accepted this evidence of Hixson's authority to transfer the certificate of title. It presented the assignment of the certificate of title, the power of attorney, and other documents to the county clerk of Cheyenne County and induced the issuance of a certificate of title to itself. It is now contended that Commonwealth Trailer Sales had a valid certificate of title which was conclusive of its ownership and right to possession of the house trailer. Such a contention is without merit. The possession of a certificate of title, though necessary to convey title to a motor vehicle, is not conclusive evidence of ownership. To hold that a certificate of title procured by theft, forgery, fraud, or misrepresentation was conclusive would operate to defeat the very purpose of the legislation. The act contemplates that a valid certificate of title is required to transfer title to a motor vehicle.

The defendant Commonwealth Trailer Sales contends that it is a purchaser for value. This is undoubtedly true, but it is not an innocent purchaser for value. It accepted an assignment of the certificate of title to the house trailer by one not authorized to assign the title or sell the house trailer. The want of authority was apparent from the power of attorney which it had in its possession. With knowledge of Hixson's want of authority, it consummated the transaction and procured a wrongful issuance of a certificate of title to itself by which it sold and converted the property of the plaintiff.

It is further argued by the Commonwealth Trailer Sales that plaintiff put the indicia of ownership of the house trailer in the hands of Hixson and that plaintiff cannot assert any rights against the purchaser brought about by the misplaced confidence in his agent. We are here dealing with a specific class of property, motor vehicles, which the Legislature has seen fit to subject to strict regulation with reference to the transfer of title. The plaintiff did not place the indicia of ownership required by statute in the possession of Hixson. Common-

wealth Trailer Sales accepted an unauthorized title with knowledge of the want of authority. It knowingly accepted a defective title. As between plaintiff and Commonwealth Trailer Sales, it was the act and omission on the part of the latter that occasioned plaintiff's loss. It constituted an unlawful conversion of plaintiff's house trailer and the trial court should have so held as a matter of law.

The defendant I. L. Pindell is alleged to have contributed to the conversion of the house trailer by wrongfully issuing, as county clerk of Cheyenne County, a certificate of title to the house trailer to Commonwealth Trailer Sales. At the close of all the evidence the defendant Pindell moved for a directed verdict, which the trial court sustained. The plaintiff contends this was error.

The duty of a county clerk with reference to the issuance of a certificate of title to a motor vehicle is set out in section 60-106, R. S. Supp., 1955. That section states in part: "(3) If a certificate of title has previously been issued for such motor vehicle in this state, the application for a new certificate of title shall be accompanied by such certificate of title duly assigned, unless otherwise provided for in this act. If a certificate of title has not previously been issued for such motor vehicle in this state, such application, unless otherwise provided for in this act, shall be accompanied by a manufacturer's or importer's certificate, as provided for in this act, a duly certified copy thereof, a certificate of title, a court order issued by a court of record, a manufacturer's certificate of origin, or an assigned registration certificate, if the law of the other state from which such motor vehicle was brought into this state does not have a certificate of title law. The county clerk shall retain the evidence of title presented by the applicant and on which the certificate of title is issued. (4) The county clerk shall use reasonable diligence in ascertaining whether or not the statements in the application for

a certificate of title are true by checking the application and documents accompanying the same with the records of motor vehicles in his office. If he is satisfied that the applicant is the owner of such motor vehicle and that the application is in the proper form, the county clerk shall issue a certificate of title over his signature and sealed with his seal, but not otherwise."

The duty of the county clerk is to use reasonable diligence in ascertaining whether or not the facts in the application are true. The liability of the county clerk, if any, is for a failure to exercise due diligence in accordance with the requirements of the foregoing section. The fact that the improper issuance of a certificate of title may have assisted some person in consummating a conversion of a motor vehicle does not make such county clerk guilty of a conversion in the absence of fraud, conspiracy, or bad faith. His liability, if any, is by direct action for a tortious failure to perform his duty, resulting in damage to the injured party. Consequently, a county clerk is not liable in conversion under the circumstances here shown. Such county clerk is not a proper party defendant in the present litigation, and a verdict was properly directed in his favor for that reason.

At the close of defendants' evidence plaintiff moved for a directed verdict on all issues except the amount of damages. Separate motions as to each defendant were not made. The motion was properly overruled. The rule is: Where a joint motion for a directed verdict is made by the plaintiff at the close of defendants' evidence against multiple defendants and the motion is not good as to one of them, the motion should be overruled. Consequently, the trial court did not err in overruling plaintiff's motion for a directed verdict.

At the close of all the evidence defendants moved for a directed verdict on behalf of each defendant. The trial court properly sustained the motion as to the defendant Pindell. The court erred in directing a verdict for the defendant Commonwealth Trailer Sales.

The judgment of the district court is affirmed as to the defendant Pindell and it is reversed and the cause remanded for a new trial as to the defendant Commonwealth Trailer Sales.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED.