FIRST NATIONAL BANK & TRUST COMPANY OF LINCOLN, APPELLEE, v. OHIO CASUALTY INSURANCE COMPANY, APPELLANT.

244 N. W. 2d 209

Filed July 21, 1976. No. 40598.

Con M. Keating of Marti, Dalton, Bruckner, O'Gara & Keating, for appellant.

Ginsburg, Rosenberg, Ginsburg & Krivosha and James E. Gordon, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

Ohio Casualty Insurance Company, hereinafter referred to as Ohio Casualty or the Insurance Company, appeals a District Court judgment against it in the amount of $5,500 and costs for the alleged conversion of a 1973 Cadillac automobile. The case was tried on the facts as stipulated by the parties. In its order, the District Court found that First National Bank and Trust Company of Lincoln, hereinafter referred to as First National or the Bank, acquired a lien on the automobile by virtue of an installment sales contract noted on the certificate of title, that was "paramount to any interest claimed by the defendant." One of Ohio Casualty's representatives, using self-help, removed the car from Nebraska without First National's consent, and the court found that Ohio Casualty had converted the car. We reverse.

The 1973 Cadillac automobile involved in this case was purchased in Oregon by Joseph J. and E. Joy Fernandez on or about October 26, 1972. On that same date, they applied for an Oregon certificate of title to the car, and received it on November 2, 1972. On or about December 10, 1972, the car was stolen from the Fernandezes in Burbank, California. Ohio Casualty was the Fernandezes' insurance carrier; and on January 9, 1973, it paid $8,400 to the Fernandezes to cover the car's loss, who at that time assigned their title certificate to the car to the insurance company. On July 20, 1973, Ohio Casualty made application to the State of Oregon for a certificate of title in its name, and received it on August 3, 1973.

Meanwhile, the county clerk of Scotts Bluff County, Nebraska, on December 26, 1972, issued a Nebraska certificate of title on the car to one William F. Handy based upon a forged Arizona certificate of title. The

car was subsequently brought to Lincoln, where, on February 28, 1973, a certificate of title from Lancaster County was issued in the name of one Matthew John Brady. Misle Chevrolet Company purchased the Cadillac from a Matthew Brady, and obtained a certificate of title in its name in Lancaster County, on March 1, 1973. Later a Jerry Neva bought the car from Misle Chevrolet and obtained a certificate of title to the car on March 6, 1973. First National acquired a lien on the car by virtue of an installment sales agreement covering this sale. The lien was noted on the Nebraska certificate of title as required by law. Some time later, the Federal Bureau of Investigation which had been searching for the car stolen from the Fernandezes, located the car in Lincoln, Nebraska, and notified an agent of Ohio Casualty, who, on January 24, 1974, using only self-help, removed the vehicle from Lincoln to California, where appellant has its west coast office. The Cadillac was sold by the Insurance Company under sealed bids for $5,500.

The sole issue in this case is whether, under the Nebraska Certificate of Title Act, sections 60-102 to 60-117, R. R. S. 1943, First National, having noted its lien on the Nebraska certificate of title acquired rights superior to Ohio Casualty, in view of the fact First National's chain of title originated in a thief. The District Court answered this question in the affirmative. We disagree and reverse.

The pertinent statute, section 60-105, R. R. S. 1943, provides in part: "(1) No person, except as provided in section 60-110, acquiring a motor vehicle, commercial trailer, semitrailer, or cabin trailer *from the owner thereof*, whether such owner be a manufacturer, importer, dealer, or otherwise, shall acquire any right, title, claim, or interest in or to such motor vehicle, commercial trailer, semitrailer, or cabin trailer until he shall have had delivered to him physical possession of such motor vehicle, commercial trailer, semitrailer, or

cabin trailer and a certificate of title or a manufacturer's or importer's certificate duly executed in accordance with the provisions of this act, * * *." (Emphasis supplied.)

First National urges that since Ohio Casualty has not complied with the provisions of section 60-105, it can have no recognizable claim to the automobile in question. This court has stated that the purpose of the Certificate of Title Act is to provide a means of identifying motor vehicles, ascertaining motor vehicle owners, and preventing theft of motor vehicles and fraud in the transfer of motor vehicles. State Farm Mut. Auto. Ins. Co. v. Drawbaugh, 159 Neb. 149, 65 N. W. 2d 542 (1954); Snyder v. Lincoln, 150 Neb. 580, 35 N. W. 2d 483 (1948). To achieve this end, the Legislature has provided that the exclusive means of transferring title was that provided by the statutory scheme. State Farm Mut. Auto. Ins. Co. v. Drawbaugh, *supra*; Snyder v. Lincoln, 156 Neb. 190, 55 N. W. 2d 614 (1952). This method of transfer does not, however, create title where none exists, nor does it give a transferee greater title than that of his transferor. In Snyder v. Lincoln, 156 Neb. 190, at 195, we stated: "In Loyal's Auto Exchange, Inc. v. Munch, supra, we said, in effect, that a purchaser who receives possession of an automobile without obtaining a certificate of title thereto, in accordance with the statute, acquires no title or ownership therein. We did not say that the possession of a certificate of title was an absolute muniment of title. A thief with a certificate of title to a stolen automobile does not divest the owner of his right to take it wherever he can find it. A certificate of title is essential to convey the title to an automobile, but it is not conclusive of ownership. It is simply the exclusive method provided by statute for the transfer of title to a motor vehicle. It conveys no greater interest than the grantor actually possesses."

The effect of a certificate of title has been stated in various ways by this court. The certificate has been

found to be "conclusive of ownership" under the circumstances of particular cases. Terry Bros. & Meves v. National Auto Ins. Co., 160 Neb. 110, 69 N. W. 2d 361 (1955); Garbark v. Newman, 155 Neb. 188, 51 N. W. 2d 315 (1952). In other cases, we have stated that the certificate is "generally conclusive of ownership." Forman v. Anderson, 183 Neb. 715, 163 N. W. 2d 894 (1969); Turpin v. Standard Reliance Ins. Co., 169 Neb. 233, 99 N. W. 2d 26 (1959); State Farm Mut. Auto. Ins. Co. v. Drawbaugh, *supra*. Yet, in other cases, the court has stated that the certificate is "not conclusive of ownership." Allstate Ins. Co. v. Enzolera, 164 Neb. 38, 81 N. W. 2d 588 (1957); Burns v. Commonwealth Trailer Sales, 163 Neb. 308, 79 N. W. 2d 563 (1956); Snyder v. Lincoln, 150 Neb. 580, 35 N. W. 2d 483, 156 Neb. 190, 55 N. W. 2d 614. We have never stated that the certificate of title is always conclusive of ownership. To hold that a certificate of title procured by theft, forgery, fraud, or misrepresentation is conclusive would defeat the very purpose of the legislation. Burns v. Commonwealth Trailer Sales, *supra,* at 316.

When the property underlying the certificate of title has been obtained by illegal means, a distinction has been made between stolen property and that acquired by fraud. The distinction is set out in the three Snyder cases, 150 Neb. 580, 35 N. W. 2d 483, 153 Neb. 611, 45 N. W. 2d 749, 156 Neb. 190, 55 N. W. 2d 614, and cited in later cases. One obtaining property by larceny cannot convey good title even to an innocent purchaser for value, but one obtaining property by fraud has a voidable title, and may convey that title to a bona fide purchaser who is then protected from claims of others. Enzolera, *supra,* at 41; Snyder, 150 Neb. at 588, 153 Neb. at 620, 156 Neb. at 195. On the other hand, the right of an owner or an assignee of the owner to recover his stolen automobile remains open to him. Snyder, 156 Neb. at 195; Enzolera, *supra.*

State Farm Mut. Auto. Ins. Co. v. Drawbaugh, *supra,*

has left in some question the validity and effect of the rule stated in the Snyder cases. In Drawbaugh the insurance company, as in this case, had paid the owner of a stolen car and taken an assignment of the owner's certificate of title. The company, however, did not obtain a certificate of title in its own name. The defendant had purchased the car and had a Nebraska certificate of title. This court, in affirming the trial court's decision in favor of the defendant in the replevin action, apparently overlooked or ignored the language in the Snyder cases with regard to stolen cars. The case, the court found, fell within the "generally conclusive" certificate category. Instead, the court relied upon Loyal's Auto Exchange, Inc. v. Munch, 153 Neb. 628, 45 N. W. 2d 913 (1951), quoting an Ohio case, Crawford Finance Co. v. Derby, 63 Ohio App. 50, 25 N. E. 2d 306 (1939). The court concluded that "A purchaser who receives possession of an automobile without obtaining the certificate of title thereto, as required by our statute, acquires no title or ownership therein." 159 Neb. at 157. We point out that neither the Loyal's Auto nor Crawford cases involved stolen automobiles. As a matter of fact, Ohio follows the rule we enunciated in the Snyder cases in theft cases. In Hardware Mut. Cas. Co. v. Gall, 15 Ohio St. 2d 261, 240 N. E. 2d 502 (1968), the court held that a thief could not convey a valid title to a stolen motor vehicle to a bona fide purchaser for value without notice, although the certificate of title used in the purported transfer appeared valid on its face. See, also, General Motors Acceptance Corp. v. Birkett L. Williams Co., 46 Ohio Op. 311, 243 N. E. 2d 882 (1969). Loyal's Auto and Crawford should not have governed the Drawbaugh case, without specifically overruling the Snyder cases. Ten years later, in Enzolera, *supra*, a case involving an insurance carrier-assignee and a subsequent bona fide purchaser, the court again cited the Snyder cases for the proposition that "generally, a thief can acquire no title to stolen property, nor can title to per-

sonal property be acquired through another's larceny or theft." 164 Neb. at 41. The court did not mention Drawbaugh, but seemed to base its decision in favor of the insurance company on the "duly issued" language of section 60-105, R. R. S. 1943, since the Nebraska certificate of title in Enzolera had been issued on the basis of a duplicate of an Ohio certificate, rather than as enumerated in section 60-106, R. R. S. 1943.

The court in Enzolera did not question the viability of the Snyder cases, but did not apply the rule to Enzolera; nor was the rule actually applied in the Snyder cases. The first Snyder case reversed a judgment for the defendant in the replevin case because the trial court had refused to distinguish between theft and fraud. Snyder, 150 Neb. 580, 35 N. W. 2d 483 (1948). In the later two Snyder cases, the taking had already been determined by retrial to have been by fraud, not theft. Snyder, 153 Neb. 611, 45 N. W. 2d 749 (1951), 156 Neb. 190, 55 N. W. 2d 614 (1952).

The correct rule is that stated in the Snyder cases that, even under the Nebraska Certificate of Title Act, a thief cannot acquire title to stolen property, nor can title to personal property be acquired through another's larceny or theft. We agree with the Ohio Supreme Court, which, in construing its certificate of title statute, which, in pertinent part, is almost identical to Nebraska's, held that a subsequent bona fide purchaser holding a certificate of title on a stolen automobile cannot prevail over the true owner absent some kind of estoppel. Hardware Mut. Cas. Co. v. Gall, *supra*. That court in making its ruling stated: "[w]e apparently must again dispel the erroneous notion that whoever first obtains an apparently valid Ohio certificate of title will be entitled to retain possession of the automobile regardless of whether he is the real owner or a bona fide purchaser without notice, whose title derives from a thief. See Buckeye Union Casualty Co. v. Nichols, 6 Ohio App. 2d 36, 215 N. E. 2d 733."

We also point out that section 60-109, R. R. S. 1943, provides in part: "The department shall prepare a report listing motor vehicles stolen and recovered as disclosed by the reports submitted to it and the report shall be distributed as it may deem advisable. In the event of the receipt from any county clerk of a copy of a certificate of title to such motor vehicle, the department shall immediately notify the rightful owner thereof and the county clerk who issued such certificate of title, and if, upon investigation, it appears that such certificate of title was improperly issued, the department shall immediately cancel the same." It is obvious from this section that the certificate of title was not intended to, and does not, prevent owners from reclaiming motor vehicles stolen from them, and that the rights of the bona fide purchaser are subject to those of the true owner. See Hardware Mut. Cas. Co. v. Gall, *supra*, 240 N. E. 2d at 506.

To the extent that State Farm Mut. Auto. Ins. Co. v. Drawbaugh, *supra*, is inconsistent with this opinion, it is overruled. We hold that the true owner, and his lawful successors in interest, have rights paramount to those of a subsequent bona fide purchaser of a stolen automobile holding a Nebraska certificate of title on the vehicle based upon a chain of ownership originating with the thief of the car.

Appellee argues that the stability of titles to motor vehicles in this state requires a contrary result as a matter of public policy. This may possibly be true, but even if so, the establishment of such a policy should be declared by the Legislature, not this court.

The judgment of the District Court is reversed and the cause is remanded with directions to enter judgment for appellant in accord with this opinion.

REVERSED AND REMANDED.